## KIDDER *v.* McCLANAHAN, MAYOR, ET AL.

[88 South. 508, No. 21645.]

1. MUNICIPAL CORPORATIONS. *Statutory requirement as to serving notice of special meeting of mayor and city council mandatory and jurisdictional.*

   The requirement of section 3388, Code of 1906 (section 5916, Hemingway's Code), which by section 3441, Code of 1906 (section 6001, Hemingway's Code), applies to all municipalities, whether under Code chapter or special charter, that a call for a special meeting of the mayor and city council shall be served by the *Marshal or any policeman on the members of the board, including* the mayor, who have not signed the call, at least three hours before the time fixed for the special meeting, is mandatory and jurisdictional; and where the statute is not complied with in that respect, such meeting is illegal, and any proceedings had thereat are void.

2. MUNICIPAL CORPORATIONS. *Special meeting of mayor and city council illegal where call not served three hours previously.*

   A special meeting of the mayor and city council called to be held at 5 o'cock p. m., April 2, 1919, which call was served on all the councilmen except one at 5 o'clock p. m. on the same date, was unauthorized and illegal, because such call had not been served at least three hours before the special meeting, as required by section 3388, Code of 1906 (section 5916, Hemingway's Code), and all acts and proceedings had at such meeting were void.

3. MUNICIPAL CORPORATIONS. *City charter held to forbid officers to enter into contracts unless specially authorized.*

   Under the provisions of chapter 8, section 43, of the Charter of the City of Columbus, as well as under section 3474, Code of 1906 (section 2812, Hemingway's Code), no contracts can be entered into by any officer on behalf of a municipality unless "specially authorized thereto by law," or by an order of the board of municipal authorities.

4. MUNICIPAL CORPORATIONS. *Contract for purchase of fire engine must be executed by officers specially authorized.*

   Any contract by a municipality for the purchase of a fire engine is not such a contract as the mayor is specially authorized by law to execute for the municipality; and, in order to legally execute

such a contract on behalf of a municipality, he must be specially authorized to do so by an order of the mayor and city council entered on their minutes; and such order must either set out the proposed contract in full, making it a part of the order adopting it, or the minutes of the board must show the important and controlling provisions of the contract which he is authorized to sign.

5. MUNICIPAL CORPORATIONS. *Mayor and city council held not authorized to delegate power to mayor to purchase fire engine.*

The mayor and city council have no right to delegate their power to the mayor to agree on the terms of such a contract; in executing same he merely carries out the mandate of the municipal board, and such mandate includes not only a direction to the mayor to execute the contract for the municipality, but, in addition, at least the controlling terms of the contract, which cannot, under the law, rest in parol, but must appear on the minutes of the board.

APPEAL from chancery court of Lowndes county.
HON. A. Y. WOODWARD, Chancellor.

Suit by Arthur J. Lussey, revived in the name of G. B. Kidder, administrator, against D. S. McClanahan, mayor of the city of Columbus, and others, to enjoin the carrying out a contract. From a final decree dissolving the injunction, issued and dismissing the bill, complainant appeals. Reversed and remanded.

*W. E. Johnson,* for appellant.

Chapter 8, sec. 43, of the Charter and Ordinances of the city of Columbus, Mississippi, says: "All contracts and obligations on the part of the city shall be signed by the mayor, but no contract or obligation signed by him shall be binding on the city unless he be authorized to sign the same by the city council, and unless such authority be shown by the record of the proceedings of the city council."

From the foregoing provision of the city ordinances and charter, it is conclusive, that the mayor has no authority to make contracts or to negotiate same. That power is

vested in the council, and he can only sign contracts, and then only such as are authorized by the council, said authority being shown by record of proceedings.

The contract of April 2, 1919, is the only contract which the record shows the mayor was authorized to sign; this contract was the only offer before the council at the time by the La France people; the mayor was authorized to sign it, it provided for interest and the resolution authorizing same was therefore void as well as the contract. The council cannot delegate its discretionary powers. This principle was announced by our court in the case of *Town of Macon* v. *Jno. W. Patty*, 57 Miss. 378.

The particular facts before the court at the time were as follows: "The board of mayor and aldermen of the municipality of Macon had delegated to a street committee the power to determine when sidewalks needed repair. This committee under its purported delegation of power ordered Patty to make certain repairs to conform with the requirements of an ordinance of the city. He refused.

The court by Mr. Justice GEORGE said: "But there is an insuperable objection to maintaining the suit. The right to decide that the sidewalk was out of repair was not vested in the two street committeemen. This question was solely for the determination of the board of mayor and aldermen, and the power to do it could not be delegated by them. This is conclusive upon the lack of power on the part of the mayor to make preferential readjustments when he learned the city, was confronted with an injunction as he attempted to do, which is shown by letters made exhibits to his answer. The latest and leading text authorities are in harmony with the above principle.

The text of 19 R. C. L., sec. 195, is as follows: "A municipal council cannot delegate to one of its own committees or to any other municipal officer the power to decide upon legislative matters properly resting in the judgment and discretion of the council. . . . The members of the council are chosen by the people to represent the municipality and they are charged with a public trust and

the faithful performance of their duties; and the public is entitled to the judgment and discretion in all matters where such elements enter intô transactions on behalf of the municipality of each member of the body upon which authority to act is conferred.

As the minutes of the proceedings of said council show that no authority for making a new contract was granted said mayor after he made the contract of April 2, 1919, which was interest bearing, it is conclusive that the contracts made subsequent to that time and proven by parol testimony were but the acts of strangers, 8 and 9, stenographer's notes, Mr. Deale's testimony.

Section 5916, Hemingway's Code, section 3388, Code 1906. The council at its regular meeting April 1, 1919, deferred action on the purchase of the truck until the following Friday night, April 4, 1919. (Mr. Wright's testimony also copy of minutes of that meeting made exhibit to appellant's bill.)

The various representatives of the different companies with the exception of the La France agent went away with the understanding that nothing more would be done until that date.

Notwithstanding this action by the city council in setting April 4, 1919, as the time to take up the purchaser of truck, the night following the postponement of the matter, the mayor issued a call for a special meeting to discuss the purchase of a fire truck. (Rec. P. of appellant's bill showing copy of council's proceedings at special meeting of April 2, 1919.) They not only discussed the purchase but made it and authorized the mayor to sign same, which he did. (Appellant's bill copy of proceedings of minutes of council of April 2, 1919, which is made an exhibit and part of bill.)

The call for the special meetings fixed five o'clock p. m. as the time for convening the council. The notice was served upon the members of council at five o'clock p. m.

This called meeting was in violation of section 5916, Hemingway's Code, section 3388, Code of 1906, in two re-

spects: First: The notice was served upon the members of council at five o'clock p. m., the time fixed for convening the council, when said section provides that said notice must be served at least three hours before the time fixed for the meeting.  Second: The call issued specified that the purpose of the meeting was to discuss the purchase of a fire engine.  See Exhibit to appellant's bill wherein a copy of minutes of meeting of April 2, 1919, is set forth and which is made a part of same and admitted as true and correct by answer of appellees.

But, the council, in violation of the provision of said statute that business not specified therein shall not be transacted, did not stay within the purview of its call, to-wit: Discussing purchase.  It purchased the truck.  The importance of above section is emphasized by the fact that the legislature by section 6001, Hemingway's Code, made section 5916, applicable to all municipalities, therefore showing that it was intended as a safeguard to the citizens and taxpayers from hasty and ill considered action on the part of municipal boards and officers.

On this question the text of 19 R. L. C., sec. 188, page 888, says: "When a statute provides a mode of procedure for municipal councils designed to protect the citizens and taxpayers from hasty and ill considered legislation or to enforce publicity in the actions of the council, the mode of procedure thus prescribed must be strictly followed. Such statutory provisions constitute conditions precedent and unless an ordinance or resolution is adopted in compliance with its conditions and directions, it will have no force.

In view of the foregoing authorities, and the patent errors which the record in this case presents, we respectfully submit that this case should be reversed and the injunction reinstated.

*E. E. Calloway,* for appellant.

1st.  The special meeting of April 2nd, at which time the resolution to purchase the fire engine and equipment

was adopted, was not called as, provided by section 5916, of Hemingway's Code, which reads. as follows: The Board of Aldermen—Special meetings. The mayor or any two aldermen may, by written notice, call a special meeting of the mayor and board of aldermen for the transaction of important business. The notice must state the time of meeting and distinctly specify the subject-matters of business to be acted upon; it must be signed by the officer calling the meeting, and must be served by the marshal, or any policeman, on the members of the board, including the mayor, who have not signed it, and who can be found personally at least three hours before the time fixed for the meeting; said notice, with the indorsement of its service, shall be entered on the minutes of the special meeting, and business not specified therein shall not be transacted at the meeting; but a member of the board shall not receive pay for attending a special meeting. Counsel for defendants in his answer to complainant's bill stated that said notice had been given but on the trial of said cause he admitted that said notice had not been given. Counsel for defendants also admitted that this section is applicable to the city of Columbus.

The special meeting of April 2nd, not being called as required by the above section, was irregular and void, and for that reason the resolution adopted at said meeting purchasing the truck and authorizing the mayor to sign contract covering the purchase was irregular and void. It is true that all the councilmen except Hon. G. Y. Banks were present at said meeting, and probably waived this notice as far as they were personally concerned, but the public is interested in the meetings of Congress, the legislature, the courts, the boards of supervisors and in the municipal meetings, and the purpose of this statute in requiring at least three hours' notice to be given, was to give the people the right to prepare to be heard on question affecting the public interest. It is the only notice which the public has of the meeting of the council. To argue that this statute is directory and can be waived by the

members of the council, is contrary to public policy, and we think, contrary to the intention of the legislature when it enacted it. We might just as well argue, that the legislature could waive proper notice of a special session; that the circuit or chancery court could waive proper notice of a special session or that the board of supervisors of a county could waive proper notice of a special meeting if all the members were present.

An officer shall not enter into any contract on behalf of the state, or any county, city, town or village thereof, without being specially authorized thereto by law, or by an order of the board of supervisors or municipal authorities. The city charter of Columbus, Mississippi, chapter 8, page 89, section 43, reads as follows: "All contracts and obligations on the part of the city shall be signed by the mayor, but no contract or obligation signed by him shall be binding on the city unless he be authorized to sign the same by the city council, and unless such authority be shown by the record of the proceeding of the council.

For the foregoing reasons, we insist that the chancellor erred in sustaining the motion to dissolve the injunction and in dismissing complainant's bill, and now insist that this cause should be reversed and the injunction reinstated.

*E. T. Sykes,* for appellee.

Ninth assignment of error, as follows: "The chancery court of Lowndes county, Mississippi, erred in the decree rendered on October 15, 1919, in said cause, in that it held that the special meeting of April 2, 1919, did not render resolution under which fire engine was purchased void."
. I am disposed to dismiss consideration of this assignment with the mere statement that, though at the regular meeting of the council on April 1st, the council adjourned over to Friday night, the 5th following, for the purpose set out in Exhibit "B" to complainant's bill; and though the council was called to meet in special session on April

2nd in advance of said Friday night, as evidenced by exhibit "A" to complainant's bill at which special or call meeting the resolution to purchase said engine, and authorization to mayor McClanahan to sign contract covering the purchase thereof, was adopted; and though the full three hours prior service of notice of the time for said special meeting did not intervene, nevertheless and for the reason that all members of the city council, save Councilman Banks, who was absent from the city and could not be served, responded by being present at the hour of meeting and without objection participated in said call or special meeting and at which meeting there were present, representatives of other and hereinbefore named competing companies, prepared to and submitting bids—no error? I submit, was committed by the chancellor in decreeing valid the proceeding of said meeting.

I submit that the requirement of service of notice three hours prior to the time of special or call meeting, is merely directory and can be waived by the councilmen to be served as was done in the instant case, And as was true in the instant case, the object and pupose of call was as effectually accomplished as it could have been if the three hours had intervened.

Said special meeting on April 2nd was called by the mayor of the city pursuant to section 53, page 91, of the charter and ordinances of the city of Columbus, and as shown by a copy thereof appearing as exhibit "C" to complainants bill, does not provide a time limit for notice to be served on the councilmen. But section 3388, Code 1906, which by section 3448 of same Code is made applicable to all municipalities does provide for notice of said call meeting to be served on all councilmen who can be found personally at least three hours before the time fixed for the meeting.

However, as the object of such service is to give opportunity to the councilmen to attend said meetings, if they appear without the required notice, and proceed without objection to the discharge of the business for which it was

called, the object has been attained, and no injury committed.  I therefore conclude with the statement, that no error was commited by the chancellor in his decision thus complained of.

In reference to appellant's citation and quotation of section 43, chap. 8, of the city ordinances, I feel it only necessary to comment by saying that it proves itself to be authority for the view contended for in this brief, instead of authority for appellant's contention.  The meaning evidenced by the wording thereof, evidences the authority of the council to designate the mayor as the one to sign the contract of purchase; and further, that in the council so authorizing, it was not, as claimed by appellant, an unlawful delegation of its power.

'Tis true, that the authorization of the city council for the mayor to sign contract covering the purchase, did not empower him to make a new and independent contract, but only to lawfully carry into effect what the council had by words authorized, namely:  That the city purchase the type 75-750 gallon triple combination fire engine and other equipments as per specifications of the American La France Fire Engine Co.  The consideration being eleven thousand, five hundred dollars.  See Exhibit "A" to bill.

This the mayor only did, namely, lawfully carry into effect the council's authorization, when he signed on April 5th, the contract of purchase consummated on May 22nd in lieu of the illegal tentative contract signed by him on April 2nd, and before the latter had been reported to the council, or his action in any way brought to the attention of said city council.  Hence, appellant's cited authorities, namely: 19 R. C. L., sec. 195; *Town of Macon* v. *Patty,* 59 Miss. 375, to the effect that the city council cannot delegate its discretionary powers to a committee or any municipal officer fails of application to this appeal.

Appellant's attorneys insist and cite sundry supposed authorities to the effect that the municipal records should evidence the making of the contract of April 2nd as well as the one finally completed on May 22nd whereas they say,

only the latter so appears, showing payment of the cash consideration, and the execution of the two purchase notes without interest, all done subsequent to the dissolution of the injunction. Whereas the truth appears, the original tentative contract together with the proposal and specifications was duly filed with the proper municipal custodian of such papers—as is evidenced by exhibit No. 1, to appellee's answer.

Again, counsel insists that the contract of April 2nd, and the resolution authorizing it were void—quoting in support thereof, *Heidelburg* v. *Batson,* 81 So., supra, and that therefore the said substituted contract consummated on May 22nd could be valid only by the authorization of a resolution of the council.

Why void because they insist that said resolution of April 2nd, authorized which I reiterat, it did not, interest bearing notes as part of the consideration.

ANDERSON, J., delivered the opinion of the court.

This is a bill in chancery by Arthur J. Lussey, appellant, a resident and taxpayer of the city of Columbus, against the city of Columbus, appellee, setting up that a certain contract which the appellee claimed to have made with the American La France Fire Engine Company on the 2d day of April, 1919, was void for certain reasons set out in the bill, and praying that an injunction issue restraining the appellee from carrying out such contract. An injunction was accordingly issued and served on the appellee. The appellee answered the bill, and a trial was had on bill, answer, and proof, and final decree rendered by the court dissolving the injunction and dismissing the bill, from which decree the appellant prosecutes this appeal.

The following facts in the case are undisputed: The city of Columbus has its own charter. It has never come under the provisions of the Code chapter on municipalities and the amendments thereto. The governing authorities

are designated in the charter as "mayor and city council."
The first day of April, 1919, was a regular meeting day for
the mayor and city council' fixed by law; and a meeting
was accordingly had. For some time prior to this meet-
ing the city authorities had been considering the purchase
by the city of a new fire engine. At this meeting, among
other orders and resolutions passed and entered by the
mayor and city council, was the following:

"This being the time agreed upon to receive bids on fire
engine, it was decided that all fire apparatus representa-
tives be allowed to submit their propositions separately.
The three companies represented were the American La
France, Republic Trucks, and White Company. After
each had submitted their proposition, at the suggestion of
Councilman Banks, due to the absence of Councilman
Vaughan, action in this matter was deferred until Friday
night. On motion the council adjourned until Friday
night, 8 p. m."

The calendar will show that Friday of the first week of
April, 1919, was the 4th day of that month. The mayor
and city council did not hold the adjourned meeting set
by this order for Friday night, but instead held a meeting
on Wednesday afternoon, April 2d. The minutes of this
meeting having to do with its call, as well as the purchase
of the fire engine, are as follows:

"City Hall, Columbus, Mississippi,

"April 2, 1919.

"Call Meeting.

"The Council met pursuant to the following call: Presi-
dent, D. S. McClanahan, Mayor; L. W. Stevens, L. A.
Vaughan, E. E. Chappelle, Joe B. Love, and S. M. Nash.

"'Columbus, Mississippi, April 2, 1919.

" 'To Hon. G. Y. Banks, L. W. Stevens, L. A. Vaughan,
E. E. Chappelle, Joe B. Love, and S. M. Nash—
Gentlemen:

" 'You are hereby commanded to attend the called meet-
ing of city council, this Wednesday, April 2, 1919, 5 p. m.,

to discuss the improvement of levee on Aberdeen road leading into city and purchase of fire equipment.

"'[Signed]   D. S. McCLANAHAN, Mayor.'

"Indorsed:

"'Received at 5 p. m. and served on all within named councilmen, except G. Y. Banks.

"'[Signed]   M. C. VANDIVER, Marshal.'

"The following motion was then introduced by Councilman Stevens and duly seconded by Councilman Chappelle, who moved its adoption:

"That the city purchase the type 75-750 gallon triple combination, fire engine and other equipment, as per specifications of the American La France Fire Engine Company. The consideration being $11,500.00.

"The mayor and Councilman Stevens were appointed to check over specifications, and the mayor authorized to sign contract covering the purchase. The motion was adopted upon the following vote:

"Yeas—Stevens, Chappelle, Love, and Nash.

"Nays—Vaughan.

"Absent—Banks.

"On motion the council stood adjourned."

In pursuance of the authority claimed to have been conferred on him by the above order of the mayor and city council, McClanahan, the mayor, on the same day said special meeting was held, entered into the contract involved in this case, by the terms of which the city of Columbus purchased the fire engine described in said order, for which it agreed to pay the sum of eleven thousand, five hundred dollars of which two thousand, eight hundred seventy-five dollars was to be paid cash within ten days after delivery and acceptance of the engine, and negotiable notes or warrants for the remainder to be made payable as follows:

"Three equal annual notes payable one, two, and three years respectively, said notes or warrants to have written on same the dates on which they are to be paid, and also that they bear interest at the rate of six per cent. per annum from date of issue until paid."

The contract contains several other important provisions, among them are certain guaranties; and specifies that shipment should be made within one hundred twenty working days after receipt and approval of the contract— "or as soon thereafter as is consistent with good workmanship and proper painting, subject to any delays resulting from many causes beyond the control of the company."

It is provided further in the contract that the company selling this fire engine shall remain the owner thereof until the same is fully paid for, and the purchaser shall not incumber the same. There are several other important and substantial stipulations in the contract.

Only a few days after this contract was entered into the city attorney discovered therein the provision for interest on the deferred payments of the purchase price, and conceiving that this was violative of section 2, chapter 209, Laws of 1918, he thereupon, without any meeting of the mayor and city council authorizing it, simply scratched out this provision in the contract.

Later on, by correspondence with the American La France Fire Engine Company, the seller of this engine, it was agreed between the company and the city attorney that no interest should be charged. The mayor and city council, however, never entered any order on their minutes either authorizing or ratifying this change in the contract.

It is contended on behalf of the appellant that the contract for the purchase of the engine is void because the special meeting at which it was attempted to be authorized was unauthorized and illegal. Section 3388, Code of 1906 (section 5916, Hemingway's Code), which, by section 3441, Code of 1906 (section 6001, Hemingway's Code), applies to all municipalities, whether under the Code chapter or special charter, provides as follows:

"The mayor or any two aldermen may, by written notice, call a special meeting of the mayor and board of aldermen for the transaction of important business. The notice must state the time of meeting and distinctly specify

the subject-matter of business to be acted upon; it must be signed by the officer . . . calling the meeting, and must be served by the marshal, or any policeman, on the members of the board, including the mayor, who have not signed it, and who can be found personally, at least three hours before the time fixed for the meeting; said notice, with the indorsement of its service, shall be entered on the minutes of the special meeting, and business not specified therein shall not be transacted at the meeting; but a member of the board shall not receive pay for attending a special meeting."

It is contended that the call for a special meeting under this statute must be served at least three hours before the time fixed for the meeting; otherwise the meeting is illegal and all acts done thereat are void. This was not done. The marshal's return on the call shows that it was received at five o'clock p. m., and the call itself shows that the meeting was to be held exactly at that time.

Is the statute merely directory, or is it mandatory? In the opinion of the court this statute is mandatory and jurisdictional. It must be followed with substantial strictness, and if it is not the meeting held is illegal, and all the orders, resolutions, and acts of the municipal authorities passed in pursuance thereof are void.

In *Jones* v. *Burford,* 26 Miss. 194, an analogous question arose with reference to special meetings of the board of supervisors, or rather the board of police, as it was called then. Hutchinson's Code, p. 710, section 5, provides with reference to special meetings of the board of police:

"That the president of the board may call a special meeting thereof, whenever it may be necessary, upon his giving ten days' notice of said meeting, by advertisement, posted at the door of the courthouse of his county."

A special meeting was held without this statute being complied with, and at such meeting the taxes of the fiscal year were levied by the board. The court held in that case as follows:

"It is clear from this language that a meeting can only be convened upon notice being given as required by the statute. The president of the board has the power, upon a certain condition, to order a special meeting of the board; and this condition must be complied with to make the meeting legal, or, in other words, to make it a board of police."

This same principle was recognized in *Brigins* v. *Chandler*, 60 Miss. 862, and *Corburn* v. *Crittenden*, 62 Miss. 125. It is contended further that the contract as entered into by the mayor is void, because there was no such order entered on the minutes of the mayor and council as under the law authorized it.

It will be seen from the minutes that the entry thereon, which it is claimed authorized the mayor to enter into the contract for the purchase of the engine, simply provides that the city purchase the engine for eleven thousand five hundred dollars, and the mayor and one of the councilmen shall check over the specifications and the mayor sign the contract.

Chapter 8, section 43, of the Charter of the city of Columbus is in this language:

"All contracts and obligations on the part of the city shall be signed by the mayor, but no contract or obligation signed by him shall be binding on the city, unless he be authorized to sign the same by the city council, and unless such authority be shown by the record of the proceedings of the city council."

Section 3474, Code of 1906 (section 2812, Hemingway's Code), is as follows:   "An officer shall not enter into any contract on behalf of the state, or any county, city, town, or village thereof, without being specially authorized thereto by law, or by an order of the board of supervisors or municipal authorities."

This statute and the ordinance (the latter, of course, having only a local application) were intended to subserve the same policy. No officer of any municipality in this state is authorized to sign a contract on behalf of the mu-

nicipality unless "specially authorized thereto by law, or by an order of the board of . . . municipal author-ities." The contract in question is not one the mayor was "specially authorized . . . by law" to sign; therefore we must look to the action of the mayor and city council for his authority.

Municipalities are required to contract on their minutes. Their minutes must show either the contract in full which is being authorized—that is, did set out in full on the minutes and made a part of the order or resolution adopt-ing the same—or their minutes must set out, in substance, at least, the controlling provisions of the contract. Nei-ther of these methods was adopted in this case. The order entered by the city council simply authorized the mayor to purchase—"the type 75-750 gallon triple combination fire engine, and other equipment as per specifications of the American La France Fire Engine Company. The con-sideration being eleven thousand five hundred dollars."

In pursuance of this authority, as shown, the mayor signed a contract for the purchase of the engine, agreeing to pay the seller eleven thousand five hundred dollars, and to make a cash payment of two thousand, eight hundred seventy-five dollars and the remainder to be payable in three equal amounts to be due in one, two, and three years respectively; and, in addition, the contract contains many other important stipulations.

The municipal authorities had no right to delegate their power to the mayor to agree on the terms and execute this contract. Under the statute and ordinance referred to, the mayor, in executing a contract, merely carries out the mandate of the municipal authorities (in this case, the mayor and city council); and under the law this man-date cannot rest in parol; it should be set out plainly on the minutes of the governing municipal board. The order entered by the council on its minutes did not contain even the briefest outline of the contract which the mayor entered into on behalf of the city. One desiring to know what contract a municipality has entered into must be

able to go to the minutes authorizing the execution of the contract, and there find on the minutes either the contract itself, or its important and controlling provisions.

For these reasons the contract entered into by the mayor on behalf of the city of Columbus is void, and has no binding force on the city. Appellant raises other questions unnecessary to decide, because the decision of these questions disposes of the case.

*Reversed and remanded.*